## CUNNINGHAM v. ERWIN.

Where a plaintiff, who had sued to recover a sum from defendant, and filed a supplemental petition praying for the recision of sales and transfers of property alleged to have been made by defendant in fraud of his, creditors, takes a rule on defendant to show cause why the issues presented by the petition and supplemental petition should not be tried separately, and the rule is made absolute, the court will be considered as having exercised its discretion as to the mode of trial best calculated to promote the ends of justice; and when no injury has resulted to the defendant therefrom, its decision will not be interfered with.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *Watts* and *Spring*, for the appellant. *Mott* and *Grymes*, for the defendant. The judgment of the court was pronounced by

ROST, J. The plaintiff alleges that he was a creditor of the late *Henry Hitchcock*, in the sum of $28,660 39½, for work and labor performed and materials furnished in and about the buildings and grounds of said *Hitchcock*, in the city of Mobile, in the years 1838–39; that he has received on account $12,000, as appears by the statement annexed to his petition.

He further alleges that *Hitchcock* had mortgaged to the president, directors and company of the Bank of the United States, all his property in the city of Mobile, including that upon and about which the petitioner had expended his labor, to secure a debt of $800,000; that, after the death of *Hitchcock*, the bank became anxious to collect their claim, and to that end proposed to his legal representatives to take the mortgaged property in satisfaction and discharge of the debt, but that it was objected by the defendant, who is the brother-in-law of *Hitchcock* and the executor appointed by his will, that there were uncovered claims, amounting to $150,000 and mostly held by mechanics and laborers, for which provision ought to be made; that it was finally agreed that the bank should pay into the hands of the defendant, as trustee for the holders of those claims, the sum of $150,000; that the defendant actually received said sum, and assumed personally the payment of this and other unsecured debts. The plaintiff availing himself of the alleged stipulation in his behalf, asks a judgment against the defendant personally for the balance due him.

The defendant excepted to the action, on the ground that it is barred by the laws of the State of Alabama, where the succession of *Henry Hitchcock* was opened and declared insolvent. He further answered denying the indebtedness of the estate of *Hitchcock* to the plaintiff, and the receipt of any sum of money in trust or otherwise for the benefit of the plaintiff, or of any other creditor of *Hitchcock;* he averred that, in all things relating to the affairs of said estate, he had acted as the agent of *Mrs. Hitchcock*, his sister, and had fully accounted for all his acts to her, and disbursed for, and paid over to her, all sums of money received by him.

After the issue had thus been formed, the plaintiff filed a supplemental petition, by which he instituted a revocatory action against the defendant and asked the avoidance of certain sales and transfers of property alleged to have been made by him in fraud of his creditors. The exception taken by the defendant to this proceeding was dismissed, and an answer to the merits filed. At this stage of the cause the counsel for the plaintiff took a rule upon the defendant, to show

cause why the issues raised should not be tried separately, to wit: the issue of     <span style="float:right">Cunningham<br>v.<br>Erwin.</span>
the indebtedness of the defendant to the plaintiff; and secondly, if said issue was
found for the plaintiff, the issue of simulation. This rule was made absolute, and
the issue of indebtedness was submitted to a jury who could not agree; a second
trial was had with a similar result; and the parties then consented to take the
opinion of the majority as the verdict. The majority of the jury were in favor
of the defendant.

The plaintiff moved for a new trial, which the judge refused, stating at the
same time his unwillingness that the case should be carried to the Supreme
Court, under the impression that he approved of the verdict. Two juries hav-
ing already failed to agree, and the judge believing that if a new trial was granted
no better result would follow, thought it best to compel the parties to carry their
differences before the appellate court. From the judgment rendered on the
verdict of the majority, the plaintiff has appealed.

The exception taken by the defendant in his original answer was properly over-
ruled. In the account filed by the administrator the plaintiff is recognized as a
creditor, though the amount due him is not set down, probably because he did not
prosecute his claim against the estate. But nothing compelled him to incur that
expense, as he may have been satisfied with the stipulation of the defendant in his
behalf. If any thing could have been gained by proving the claim against the es-
tate, the defendant might at all times have had the benefit of it by paying the debt.
Moreover the law of the State of Alabama, requiring the creditors of insolvent
estates to file and prove their claims within a limited time, under the penalty of
forfeiture, was passed several years after the death of *Hitchcock*, and after the
defendant is alleged to have assumed to pay the uncovered debts. The right of
the plaintiff to be paid, if he is one of the creditors contemplated by the trust,
was perfect, and could not be taken away by subsequent legislation.

The defendant alleges that the rule to separate the issues was improperly made
absolute, and asks that the whole case be remanded, should the court think the
plaintiff entitled to his action.

This is a question of practice, in which the district judge has exercised his
discretion in the manner which to him seemed best calculated to promote the
ends of justice. His decision has worked no injury to the defendant, and justice
does not require that we should interfere.

On the merits, we consider it proved that the defendant received from the bank
of the United States the sum of $150,000, and assumed personally to pay the
unsecured creditors of *Hitchcock*, one of whom he himself was to the amount of
nearly $40,000. The testimony of *Fisher, Brown* and *Barney*, leaves no doubt
on our minds as to the nature of the agreement. The debts due by the estate,
besides the claim of the bank, amounted nearly to $250,000; but many of the
creditors held collateral securities, and the defendant believed the sum he receiv-
ed sufficient to satisfy the uncovered claims. His efforts to conceal the agree-
ment from the creditors whom he did not intend to pay in full, in order that he
might purchase their claims at a discount, and the fact that, in one instance, he
succeeded in doing so, show that his object in making the arrangement was to se-
cure the amounts due him and his friends, and to speculate upon the necessities of
the other creditors, most of whom were mechanics and laborers.

The sum thus received by him, being in his hands a trust fund for the benefit
of a particular class of creditors, each of those creditors has the right to enforce
the specific execution of the trust to the extent of his particular interest. It is

CUNNINGHAM    what would be termed, under our laws, a stipulation in favor of third persons, of
    *v.*       which they always have the right to avail themselves.
ERWIN.
              Considering that the plaintiff's allegations place him among the creditors of
*Hitchcock* whom the defendant is bound to pay, the only question remaining is
whether those allegations are true; and here we will premise that our decision
rests upon the evidence applicable to the allegations as they are made. The plain-
tiff having claimed the value of his work, without alleging any contract, we have
taken the value proved, in preference to the price stated by some of the witness-
es to have been stipulated for part of the work. We have disregarded the prob-
able estimates made by the witnesses, as we did in the case of *Seaton* v. *Second
Municipality*, 3 An. 44. Statements that the work done by the plaintiff for *Hitch-
cock* was worth from $25,000 to $30,000, without any knowledge in the witnesses
of the quantity of work actually done, are not evidence.

The plaintiff claims $5,900 for making Water street, and $300 for working on
Conception street, *under contracts*. No contracts are shown, nor is there satis-
factory evidence to show the quantity and value of the work done on those streets,
and the liability of *Hitchcock* to pay for it. It results from the evidence that the
corporation of the city of Mobile was to pay *Cunningham*, in bonds, for making
Water street, and that *Hitchcock* was to cash those bonds. It is proved that the
plaintiff transferred to *Hitchcock* city bonds to the amount of $3,450 99, for
which, under this agreement he is entitled to a credit, in a general settlement of
accounts. Beyond this amount, the claim for making Water street must be dis-
allowed; the claim for making Conception street, is not proved.

There is no conflict in the evidence as to the quantity of work done on the lots
mentioned in the plaintiff's account for *Henry Hitchcock*. But it is otherwise
with respect to the prices charged. The plaintiff's witnesses say that the prices
are low, those of the defendant consider them too high, on the ground that the
materials for filling up were furnished by *Hitchcock*, and were near the lots filled
up. They say that those materials were worth at that time ten cents per cubic
yard.

This distinction has not been made by the witnesses of the plaintiff. We think
there is much force in it, and that the prices charged should be reduced. The
reduction which we would feel disposed to make would probably bring down the
average price of the work under thirty-seven and a-half cents a cubic yard. As
however, it is admitted by the defendant's counsel, that thirty-seven and a-half
cents a cubic yard is a fair average remuneration, we will take that to be the real
value. A deduction of $3,287 43½ will have to be made on that account from
the amount claimed by the plaintiff.

The plaintiff admits credits, specified in his account, amounting to $12,000.
But *William Edmunds*, one of his witnesses, who was the clerk of *Hitchcock*
before and at the time of his death, has testified, under a commission taken by
the defendant, that he had knowledge of the state of accounts between *Hitchcock*
and the plaintiff up to the time of the death of *Hitchcock*, and that he paid to the
said plaintiff, for and on account of said *Hitchcock* all the items of the account
annexed to the commission, at the times and dates therein specified; that the ac-
count is in his (the witness') hand writing; and that he has no doubt of its cor-
rectness. Besides the credits admitted by the plaintiff, this account contains
charges of payments made to the plaintiff, on account of his work, and also for
the rent of a house belonging to *Hitchcock*, which it is proved he occupied:
these items amounting together to the sum of $6,732 81, must be allowed.

The charge of $375 for hauling brick is not proved.  The witness *R. D. James* <span>CUNNINGHAM<br>*v.*<br>ERWIN.</span> proves that *Isaac H. Erwin*, the administrator of *Hitchcock's* estate, paid on plaintiff's account the sum of $1050 99, which is also to be deducted from his account.

The credits to which the defendant is entitled, are as follows:

| | |
|---|---:|
| Deductions on the price charged for opening Conception and Water sts. | $2,749 01 |
| Deduction on the value of the work as charged, | 3,287 43½ |
| For hauling brick | 375 00 |
| Payments admitted | 12,000 00 |
| Additional payments proved by *Edmunds* | 6,732 81 |
| Payment proved by *R. D. James* | 1,050 99 |
| | $26,195 24½ |

This sum deducted from the amount of the plaintiff's claim, leaves a balance of $2,465 14½, for which we believe him entitled to a judgment.  In arriving at this balance, we have kept out of view the sum advanced by Major *Hitchcock* for the purchase of the plaintiff's property, this appearing to us a transaction in which the estate of *Henry Hitchcock* is not concerned.  Under the laws of Alabama and the facts of the case, the plaintiff is entitled to eight per cent interest, from the judicial demand only.  The transactions between the plaintiff and *Hitchcock*, were carried on in such a loose and irregular manner, as to make it extremely difficult to ascertain their rights with precision; if we have not reached the full justice of the plaintiff's case, the fault is not ours.

It is ordered that the judgment of the court below be reversed, and that the plaintiff recover of the defendant the sum of $2,195 14½, with interest at the rate of eight per cent per annum from the 8th of April, 1846, till paid, and costs in both courts. It is further ordered, that this cause be remanded to try the issue of simulation.